We'll turn to our first case, which is the Board of Education of Wappinger Falls v. D.M. Counsels? Good morning, Your Honor, Stephen Banks for the appellant, Wappinger Central School District. We'll hear from you, good morning, Counsel. Morning. May it please the Court, the IDEA's statutory obligations are clear, as are the prior decisions of this Court, that there must be a demonstration that a parentally selected private school provides specially designed instruction to meet the unique needs of a child with a disability in order to receive public funds in the form of tuition reimbursement. But, Counsel, all the school districts offered was 15 to 1. That didn't serve the needs of this child at all, did it? We submit that it did. The school district in this particular school year proposed a more restrictive placement with a group, a cohort that was more in line with the student's individual academic profile, and we believe that that placement offered by the district was appropriate. But even if this Court were to find that it was not appropriate, it did not provide a free appropriate education, the parents would still not be entitled to tuition reimbursement because the private school here did not provide specially designed instruction and was inappropriate. Do you want to elaborate on that? Certainly. Based on the record before this Court and before the DSR below, this program did not provide speech-language services. It did not provide counseling. It grouped the student with a much older group of students, including some that were 17, whereas this student was 11 at the time. Despite all of this, despite the lack of specially designed instruction, despite the lack of consistency between this student's needs and the program offered at Ridge, the administrative review officers, meaning the impartial hearing officer and the state review officer, excused Ridge's inadequacies based on its environmental attributes, specifically the size of its classes, its daily schedule, its use of field trips, its use of videos. The SRO justified the reliance on these environmental attributes by announcing that the judiciary has recognized a more relaxed standard for unilaterally selected private placements. Mr. Banks, is that really a fair assessment of the state review officer's opinion? I read it as first he decided that he thought it was a satisfactory program, and then he went on to say that view was confirmed, as he put it, by this notion or supported by some notion that the judicial standard had changed. But he didn't primarily rely on that somewhat gratuitous interpretation of what courts were doing, did he? We submit he did, because the analysis that precedes the jump to this general educational standard and the concept of retreat also focused in on the environmental attributes of this program. The SRO did not describe the specially designed instruction offered to the student, nor could he, based upon the limited record in this case. This program educated this student largely in a single group with the five other students that comprised the student body of this particular school, two of which were 17 at the time. The school, in its instruction, relied on materials from a much more advanced level, including reading material on a recommended high school reading list. It failed to provide the related services that the student required. And even though the SRO expressed approval at the use of field trips and videos, there's no information in this record, nor did the SRO explain, nor could he, how these field trips and videos were modified or intended to meet this student's particular unique needs. Now, both the IHO and the SRO reached the same conclusion, correct? Yes, both administrative review officers' analysis is substantially the same. And aren't we supposed to defer to their expertise? Not entirely. Deference has its limits, certainly on questions of educational policy. This court and the judiciary are to defer to the opinions of the state review officer in particular, but only when their findings are supported by proper analysis and supported by the record. And that's not the case here, nor is this court to defer on issues of legal standards. That is an issue for the court to decide de novo. And even in terms of deference, not all determinations are subject to the same deference. In the MH case, this court recognized that it was more appropriate to defer on questions of educational methodology as opposed to determinations concerning progress or indications of progress. And here, Ridge not only fails to provide the specially designed instruction tailored for this student's unique needs, it fails to present any evidence of objective measures of progress that would support it as an appropriate placement for the student. Counsel, you don't disagree that the school districts, however, didn't offer a fair and appropriate public education. We disagree. We recognize that that question is more in the arena of deference. But we do submit that both the IHO and the SRO, their finding against the district's placement is not supported by the record. It is largely based on speculation and that a proper review of the record really shows that the district provided a program that was reasonably calculated for this student to make progress, both in terms of giving the student a more restrictive placement, putting him in a program where the teacher could more appropriately gear the academic curriculum to his needs and the needs of other students with whom he regrouped who had cognitive and academic profiles more closely aligned with him. So while I recognize that perhaps deference is stronger on that question, we still submit that based upon this record and what the SRO and the IHO relate upon, deference is not owed on prong one, namely the question of the appropriateness of the district's placement. That placement was appropriate. And the Ridge program, for all of the deficiencies I just stated, was not appropriate for the student. And tuition reimbursement should have been denied. All right, Counselor, you retain two more minutes for rebuttal. We'll hear from the appellees. Counselor? Good morning. May it please the Court, my name is Elizabeth Curran with New York Legal Assistance Group and I represent the parents in this case. Your Honors, this is appellant's fourth fight at the apple here. The SRO, the IHO and the district court have all reviewed the same record that is now before this court and they've also considered all of the arguments that the district raises again here. All three of those decision makers found in favor of parents and we urge this court to do the same. Could you respond to opposing counsel's arguments about the quality of the Ridge school? Certainly, Your Honor. So the only thing the parties really disagree on here is whether parents met their burden to establish that Ridge was appropriate. Opposing counsel does point out some deficiencies in Ridge's program, but those deficiencies were duly considered by the IHO and the SRO, as well as the district court. And those deficiencies did not render Ridge inappropriate. In fact, all three of the decision makers below found that Ridge taught EM in the best way that he learned. The district court's analysis, for example, lays out the three key needs that the student has. Ms. Curran, we're familiar with the record. We're familiar with the resolutions reached below, but this, after all, is an appeal. So what we're interested in is not necessarily what a district court judge said or IHO said, but why the findings you are defending are correct ones. Certainly, Your Honor. So the findings are correct because there's a preponderance of the evidence in the record that shows that Ridge met the student's unique needs. Or the court on the issue of whether Ridge was appropriate. Well, Ms. Curran, Ridge had no students to speak of. It had no faculty. It had no curriculum. Most importantly, it had, as far as I could tell, and please correct me if I'm wrong, no objective programs for measuring performance or improvement or anything like that. And, you know, they had these field trips every week, but apparently they just went wherever they felt like it and so forth. So I've got to say, I've never seen a school like this. Why is this a school? Well, this is a school that has been in operation for several years and is specifically designed to meet the needs of students with autism who have social skills functioning deficits and who need intensive one-on-one instruction. And that is precisely what the SRO and the IHO found that Ridge provided. How does it do it? Who are the faculty that are expert or professional in treating autism? So the two primary faculty who are in charge of running the school are Linda Condor, who is a certified special education teacher, and Michael Condor, who has years of experience in educating students with autism, who met EM's unique profile. And I would also note that a lot of the requirements that teachers, for example, be certified in special education, don't apply to unilateral placement. So that's not a dispositive factor here. What we urge the court to do is to look to the precedents of the circuit that require deference on questions of educational policy, which is exactly what the question of whether Ridge's program, regardless of, you know, I don't understand the education policy. I don't understand how Ridge functions as a school. I mean, I've, you know, paid a lot of tuition bills. I've sent a lot of, sent a handful of people through school. I've never, all different kinds of schools. I've never seen anything like this. So the education policy. How does it qualify as a school just because it calls itself a school? That, I don't think that's really a question that is before. It's my question. It may not be your question. It's my question. So in response, Ridge operates like many schools do. And Linda Conner goes through exactly what the classes are and different subjects are that are taught throughout the day. And it does have a curriculum that meets New York special education standards. And that is what the SRO found. But this is not special education. This is, this is, this is remediating autism. They're very different. We disagree, Your Honor. We do believe that Ridge is a special education school. It's a school that is specifically designed to serve students with autism. The record supports that. Linda Condor testified that one of the key aspects for the students in her program is social pragmatic, for example. And that is something that incorporates in every, every day throughout the school day. Ms. Curran, is the school accredited or licensed in any way by the state? It is not. But as the Supreme Court recognized in Carter and has been codified in New York state regulations, there's no requirement that the school be codified as approved. The only thing that the SRO needs to decide is, did the school meet the students' needs? Was specially designed instruction provided that was adapting the content methodology of instruction to EM's needs? And there is sufficient evidence in the record. Is there a description in the record of the physical facilities of the school? I believe that can be found in Linda Condor's testimony, Your Honor. There's also a letter describing the various things that were worked on in one of the semesters that EM attended. And what is that description of the facility? My understanding is it is a it's a small school building and there are primarily the students are taught in one room. But there are opportunities for breakout rooms where students can go and receive one on one individualized instruction as needed, which EM did receive. And as the SRO and ISO found, that was one key aspect of his unique needs that were met by the school. So it is a small and nurturing environment in terms of the physical description of what the school is like. And Your Honor, going back to another point that was raised by appellants on the lack of related services, the SRO did consider whether Ridge's failure to provide a lack of related services rendered the school inappropriate. And the SRO said, even considering this, Ridge did meet the students' unique needs, especially in the area of, for example, language pragmatics. How? How did it do that? It provided opportunities for guided peer instruction. When you're a student with autism, in EM's case, he had a great deal of difficulty. What does guided peer instruction mean? Is it talking to a classmate? No, Your Honor. Guided peer instruction means providing structured opportunities for students to interact with one another. And that's what Linda Condor testified happened, for example, in the beginning of each day at the end of each day. That's what students would work on. It was and Dr. Collymore, who had the opportunity to observe the program and is also an expert in this case, found that social pragmatics, the explicit instruction that's needed to teach students to interact with one another, that was worked on and was a very. Two teachers trained in that. I'm not aware, and I don't believe that's in the record, Your Honor. They just picked it up on the Internet? I believe that it's a skill that they had developed through the years of experience that they had teaching students with this disability, Your Honor. In the record, Linda Condor testifies that she had up to, I think, 10 years of experience teaching students with autism. And, you know, the SRO and ISO considered all of this and they made an educational policy judgment. Is this child making progress at the Ridge School? Can you discuss that for a moment? Yes, he is, Your Honor. I'd be happy to. There is substantial evidence in the record that he is making progress at the Ridge School across the three key areas of his needs, particularly with respect to his reading skills, which have improved dramatically. There is objective evidence in the record that was credited by both the IHO and the SRO that, according to a standardized test, that he made significant progress in his reading. He made progress in math skills as well, and Linda Condor testified to the specific skills that he was able to perform at the end of the year versus at the beginning. And importantly for this student, his social skills improved immensely. His mother, for example, talks about how before he started attending Ridge, he wasn't able to socialize or have conversations with family members outside of school. Now he's doing that. Now he's socializing and he has friends for the first time at school. So for this student, it really is night and day compared to the program that was offered by the district and the program that was offered at Ridge, which taught him in the best way that he learned. And allowed him to make educational progress. The program that was offered by the district was 15 to 1, wasn't it? That's correct. And both the IHO and the SRO found that that was inappropriate because it did not meet the student's needs. The justifications that the district provides here for the 15 to 1 are the same ones that were considered below and rejected. And again, those are educational policy questions that require deference to the IHO and the SRO. So we submit that this court should affirm the decisions below. If there are no further questions, I can rest on our briefs and ask this court to affirm the unanimous decisions of the IHO, SRO, and district court, finding that parents did satisfy their burden on unilateral placement. The district failed to satisfy their burden on its 15 to 1 class. We ask this court to affirm in favor of parents. Thank you. Thank you, Mr. Banks. You've retained two minutes for rebuttal. Thank you, Your Honors. I just want to briefly address the argument that this is the district's fourth fight. Therefore, the district should not receive any relief or that deference is justified here. We've submitted that doesn't matter. There have been other cases where the IHO and the SRO have been in agreement and this court has interceded where the decision was not supported by the record, was not appropriately supported by thoughtful analysis. And I would certainly refer the court to the TK case where that exact scenario took place. I also want to just briefly address that. The concept of language pramatics, the record's quite clear. I recognize that both the SRO and the IHO pointed out the fact that the sole witness from Ridge said that they worked on language pramatics every day. However, the record is quite clear that this working on did not include trained professionals. It did not include goals. It did not include any sort of methodology. And I don't think that testimony about working on language language pramatics should be given the weight that it has been given by the administrative review officers or by the parents. And that it did not address the student's other needs in speech language. Autism is a speech language disability. This student had other deficiencies as recognized by the evaluators, by IEPs, and he did not receive any of that at Ridge. He did not receive counseling. And those are services that would have been provided to him at the district's proposed placement, which is another reason I believe the district's proposed placement should be considered an appropriate placement. And the fact that they were not provided by Ridge's reason, it was not appropriate. And we refer to our briefing and submit that the appeals should be granted and the district's decision be reversed and the tuition reimbursement claim be denied. Thank you. Thank you both. I appreciate the argument.